## JOSEPH MEYER

### v.

## SOPHIA BUTTERBRODT.

*Dram Shops—Loss of Means of Support—Death—Remote and Proximate Cause—Drowning.*

1.  Intoxication will be considered the proximate cause of a person's death, although a new force or independent act is the immediate cause thereof, where such intoxication puts the person killed in the way of the operation of such force or act.

2.  In the case presented, this court holds that the husband of plaintiff came to his death from drowning by reason of his intoxicated condition.

[Opinion filed June 21, 1892.]

APPEAL from the Circuit Court of Randolph County; the Hon. GEORGE W. WALL, Judge, presiding.

Mr. H. CLAY HORNER, for appellant.

Mr. W. M. SCHUWERK, for appellee.

The following statutes, providing for damages for injuries resulting from the sale of intoxicating liquors, are in substance the same, except that the New York statute contains no express provision for exemplary damages. Code of Iowa, 1873, Sec. 1557; N. Y. Statute at Large, Vol. 4, page 54, Sec. 28; Rev. Stat. Ill., 1874, page 439, Sec. 9; Rev. Stat. Maine, 1871, page 304, Sec. 32; Rev. Stat. Ohio (S. & C.), page 1432, Sec. 7. The courts of last resort in these States have given these statutes a very practical and liberal construction.

In New York it was held in a peculiar case "that it was not necessary for plaintiff to show that the injury was the natural, reasonable or probable consequence of his intoxication, and that it was sufficient if it appeared that the act was done while the person was intoxicated." There is no comparison between this case and the case at bar. It is only cited to show how

jurists of other States construe a statute similar to our own, and the reasons given for so construing the same. See Neu v. McKechnie, 95 N. Y. 632.

It is not the intention of the statute that the intoxication alone, exclusive of any other agency, shall do the whole injury for which a civil remedy is given. The statute was designated for a practical end and to give a substantial remedy, and should not be so construed as to defeat the purpose designated. Schroder v. Crawford, 94 Ill. 357.

For a full discussion of the right to maintain the action, the damages that may be recovered, etc., see Hacket v. Smelsley, 77 Ill. 109; Horn v. Smith, 77 Ill. 381.

A saloon keeper is liable where a man becomes intoxicated from liquors sold by the saloon keeper, and while so intoxicated falls or jumps from a street car and gets his leg crushed, and several days thereafter dies from the effect of such injury. McMahon v. Sankey, 133 Ill. 636.

Where the evidence shows a wilful or wanton violation of the law, or reckless or illegal acts and conduct in utter disregard of the rights of others, exemplary damages may be assessed in addition to the actual damages. Kennedy Bros. v. Sullivan, 136 Ill. 94; Field on Damages, 2d Ed. 471–2; Salsbury v. Herschinroder, 106 Mass. 458.

Appellee had a perfect right to remit a part of the damages in this case to avoid a new trial. Union Rolling Mill Co. v. Gillen, 100 Ill. 52.

A bill of exception is a pleading of the party tendering it. Rogers v. Hall, 3 Scam. 5.

To make case for recovery under statute for injury by death of husband, plaintiff must show : 1. That defendant gave or sold intoxicating liquor to husband. 2. That such liquor caused his intoxication, in whole or in part. 3. That such intoxication caused his death. 4. That by reason of such death, plaintiff was injured in her means of support. If the first three steps are established, the fourth may be inferred. Flynn v. Fogarty, 106 Ill. 263.

This court will not reverse, unless it is apparent that injustice has been done. Grier v. Puterbaugh, 108 Ill. 602.

SAMPLE, J. This suit is brought under the Dram Shop Act, to recover damages for the alleged loss of the means of support occasioned, as claimed, by the death of appellee's husband, caused by the sale of intoxicating liquors to him by the appellant. It is clearly proven that appellant sold to appellee's husband, on the day of his death, intoxicating liquor; that such liquor caused him to become quite intoxicated; that by reason of the husband's death the appellee was injured in her means of support. These three necessary elements are so fully proven, that they are not seriously controverted. It is earnestly contended, however, that the fourth essential element, in order to make a case, is not proven, viz.: That such intoxication caused the husband's death, or if it did, that the intoxication was so remote as a cause, that there can be no recovery. It appears from the evidence that the deceased, F. Butterbrodt, on Sunday, June 29, 1890, was at the appellant's saloon nearly all day prior to his death, and during that time obtained from appellant and drank such an amount of intoxicating liquor that he became quite noticeably under its influence. About four or five o'clock of the afternoon of the day of his death, he, with some other parties, went down to the Kaskaskia river to go swimming. He was not invited to go by any of the other parties, but being an expert swimmer, and knowing from their conversation that they were going down to the river for that purpose, went along of his own accord. It seems that the authorities of the village of Evansville, where the deceased resided, had forbidden swimming within the corporate limits. The parties therefore went down the river farther than usual. When they reached a gully the deceased insisted on going into the river there, while the other parties insisted that they should go still farther down. The deceased persisted and went into the river at that point. Soon after the deceased had gone into the river, the town constable came along and requested him to come out, as he was violating the ordinances of the village; but the deceased persisted in swimming out into the river, and, after reaching a distance of sixty or seventy yards from the bank, or, as some of the witnesses testify, one hundred yards, he suddenly sank out of sight, and before he could be rescued,

was drowned. That he was not in a fit condition to go into the river seems to be established by the fact that those at the saloon tried to keep him from going down to the river, while others at the bank tried to keep him from going in after he got there, although it was well known that he was an·expert swimmer.

A Mr. Heck swore that he was standing about twenty yards from where the deceased went into the river, and was looking at him when he drowned; that he swam out into the river by jerks; kept coughing; his head went under the water twice, and then he sank out of sight. Several other witnesses testify to substantially the same state of facts; among others the constable who had ordered the deceased to come out of the river, as the ordinance of the village forbade bathing in the river within the corporate limits.

He testified that the deceased swam out a distance, part of the time on his back, then turned over, made some kind of a motion and went under. He did not notice, however, that his head went under the water before sinking. We hold that under the evidence the jury were authorized to find that the deceased was drowned by reason of his intoxicated condition. It is urged by appellant, however, that the death by drowning was a *fatuitous* event not *naturally* resulting from the intoxication, and instances in illustration the case of a man being drunk, lying down under a tree, and during a storm it falls upon and kills him. He also cites the cases of Shugart v. Egan, 83 Ill. 58, and Schmidt v. Mitchell, 84 Ill. 197, in support of his contention. In the former case the drunken man was stabbed by another in a quarrel which he had provoked. In the latter case the drunken man was shot while attempting to enter the barn of another about midnight. It is not considered that the instances cited are like the case in hand. In the first case there was the intervening cause of the storm that caused the tree to fall. In the other cases cited from the Illinois reports there was the intervention of the independent act of a third person, directly producing the injury, between the wrong complained of and the damages sustained. It was upon this principle that both of these cases were decided. A *new* force had intervened, of itself sufficient to

stand as the cause of the injury, hence, it was held that the original cause, the intoxication, was too remote. The terms, *new force*, and *independent act*, it will be observed, *ex vi termini*, import that the original cause did not result in putting the person physically injured in the way of their operation. If the cause did so operate as to put the person in the way of the new force, or independent act, then, although such force or act [directly produced the injury, yet in such case the latter would be the secondary, and the former the proximate cause. It is upon this principle that it has been held in this State (Schrader v. Crawford, 94 Ill. 357; Emory v. Addis, 71 Ill. 273), that a widow could recover damages from one causing the intoxication of her husband, who, while in that condition, was run over and killed by a railroad train. In both these cases there was a new force or independent act directly causing the deaths, yet for the reason that the intoxication put those persons killed in the way of the operation of such force or act, the intoxication was held to be the proximate cause. It has been held, for example, that case will lie against a defendant for not repairing his fences through which the plaintiff's horses escaped into the defendant's close and were there killed by the falling of a hay stack. Broom's Legal Maxims, 7th Ed., 207, referring in note 3 to leading cases upon this subject. And even in trespass, a person who sets in motion a dangerous thing which occasions mischief, will be liable, if the circumstances show such mischief to have resulted from a continuation of the original force applied to the moving body by the defendant, or if he can be considered in legal language as the *causa causans*. *Ibid.* In this case it was not unnatural that the deceased should go into the river, and the appellant might well have foreseen that for a drunken man to do so was dangerous. The fact that he may have disported himself with some skill for a time does not relieve the act of going into the water in his condition of its peril. There was no error in giving or refusing the instructions complained of in the argument of appellant. What we have already said disposes of the points made against them. The judgment will be affirmed.                                   *Judgment affirmed.*